**LONGVIEW BANK & TRUST COMPANY, Appellant,**

v.

**FIRST NATIONAL BANK OF AZLE, Appellee.**

No. 2–86–234–CV.

Court of Appeals of Texas, Fort Worth.

April 14, 1988.

McDaniel & Neeley and Gregory W. Neeley, Longview, and Ramey, Flock, Hutchins, Jeffus, Crawford & Harper and Mike A. Hatchell, Tyler, for appellant.

Law, Snakard & Gambill and W. Bradley Parker, Fort Worth, for appellee.

Before JOE SPURLOCK, II, KELTNER and LATTIMORE, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

The First National Bank of Azle (Azle), appellee, sued Longview Bank & Trust Company (Longview), appellant, for breach of contract occasioned by Longview's dishonor of a check. Azle had previously presented the check to Longview for collection. After the check had been finally paid and after the expiration of the midnight deadline, Longview returned the check to Azle for failure of Azle to properly follow rules for endorsement and presentment.

Azle filed a motion for summary judgment. The trial court granted Azle a partial summary judgment on liability. The issue of attorney's fees was tried to the court. The court granted partial summary judgment for the amount of the dishonored check, $20,122, and granted $8,000 in attorney's fees for Azle. Longview raises three points of error on appeal.

We reverse and remand.

Longview's customer, John Waddell Construction Company, wrote a check on its account with Longview for $20,122 payable to Engineered Metal Works and E.G. Smith Construction. Payee Engineered Metal Works endorsed the check, but payee E.G. Smith Construction did not. Engineered Metal Works deposited the check in its account at Azle. Azle presented the check for payment to Longview via the Federal Reserve Bank in Dallas County. Longview received the check from the Federal Reserve on March 19, 1985 and paid the check by posting it and deducting the amount from Waddell's account.

When the check was returned to Waddell in his monthly statement, he discovered the check was not properly endorsed and advised Longview of the missing endorsement. Longview then returned the check to Azle by a "late return" letter, dated April 5, 1985. Azle made a claim against Longview Bank through the Federal Reserve Bank which was denied. Azle then sued Longview.

In its first point of error, Longview contends that the trial court erred in rendering partial summary judgment on liability because: 1) Azle breached a presentment warranty of good title by negotiating the improperly endorsed check; 2) Azle's breach of its presentment warranties was not remedied by the technical accountability sections of TEX.BUS. & COM.CODE ANN. secs. 4.213 and 4.302 (Vernon 1968), the midnight deadline and payment-by-posting provisions; and 3) Azle's summary judgment proof was insufficient to establish essential elements of its cause of action. We will first consider whether Azle's negotiation of a check without the signature of a co-payee was a breach of the presentment warranty of good title, TEX. BUS. & COM.CODE ANN. sec. 4.207 (Vernon 1968). This is a case of first impression in Texas.

A warranty of good title is nothing more than an assurance that no one has better title to a check than the warrantor, that the instrument presented contains all necessary endorsements and that such en-

dorsements are genuine or otherwise deemed effective. *See Aetna Life and Casualty Company v. Hampton State Bank*, 497 S.W.2d 80, 84 (Tex.Civ.App.— Dallas 1973, writ ref'd n.r.e.), *Miller v. Federal Deposit Ins. Corp.*, 134 Ariz. 342, 656 P.2d 631, 633 (Ariz.Ct.App.1982).

■ Where, as here, a check is made payable to more than one payee jointly and not in the alternative, it can be negotiated, discharged or enforced *only* by all of the joint payees. *See* TEX.BUS. & COM. CODE ANN. sec. 3.116(2) (Vernon 1968). When Engineered Metal Works deposited the check with Azle, no proper negotiation occurred under TEX.BUS. & COM.CODE ANN. sec. 3.202(a) (Vernon 1968) because the check lacked the necessary endorsement of E.G. Smith Construction Company, the other payee. For the same reason, Azle could not become a holder as defined in TEX.BUS. & COM.CODE ANN. sec. 1.201(20) (Vernon Supp.1988) and so could not become a holder in due course under TEX.BUS. & COM.CODE ANN. sec. 3.302(a) (Vernon 1968). Thus, Azle took the check subject to all claims or defenses of any party or person. *See* TEX.BUS. & COM.CODE ANN. sec. 3.306 (Vernon 1968).

■ The payment of the check did not discharge Azle's liability since it was a depository bank which paid the instrument inconsistent with the terms of the restricted endorsement. *See* TEX.BUS. & COM. CODE ANN. sec. 3.603 (Vernon 1968). Payment of the check without the endorsement of the joint payee was an exercise of dominion and control over the check by Azle inconsistent with the non-signing payee's rights and amounted to a conversion.

■ We hold that Azle's attempted negotiation was insufficient to transfer title to the instrument. Numerous other states have held that payment of a check without a necessary endorsement of a payee breaches the presentment warranty of good title. *See Federal Deposit Insurance Corp. v. Marine National Bank of Jacksonville*, 431 F.2d 341 (5th Cir.1970)—interpreting Florida law; *Trust Co. of Colum-*

*bus v. Refrigeration Supplies, Inc.*, 241 Ga. 406, 246 S.E.2d 282, 284–85 n. 1 (1978); *Morgan Guar. Trust Co. v. Chase Manhattan*, 36 U.C.C.Rep. 584 (N.Y.Sup.Ct. 1983); *Foremost Insurance Co. v. First City Savings & Loan Association*, 374 So. 2d 840, 842–43 (Miss.1979); *Miller*, 656 P.2d at 633; *Chilson v. Capital Bank of Miami, Fla.*, 237 Kan. 442, 701 P.2d 903, 906–07 (1985); *Stapleton v. First Security Bank*, 207 Mont. 248, 675 P.2d 83, 86 (1983). Also, the general theory of the Uniform Commercial Code is that the burden of making sure endorsements are valid rests directly on the first bank in the collection chain since it is the bank which has the best opportunity to verify the endorsement. *See,* Hagans, *Litigation by and Against Financial Institutions* B–5, 6, in State Bar of Texas Advanced Civil Trial Course (July 1987); TEX.BUS. & COM.CODE ANN. sec. 4.207 (Vernon 1968).

■ The situation of paying on an instrument missing a necessary endorsement is analogous to paying on an instrument with forged or unauthorized endorsements. In the latter case the loss falls on the depository bank because it violated the presentment warranty of good title in section 4.207. *See Fidelity & Casualty Co. v. First City Bank of Dallas*, 675 S.W.2d 316 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). Depository banks are best situated to catch alterations or unauthorized or missing endorsements because they deal "face to face" with the endorser or holder presenting the check. *See id.* Payment of a check without a necessary endorsement is the same as payment on a forged endorsement. *See Great American Ins. v. American State Bank*, 385 N.W.2d 460, 464 (N.D. 1986); *Chilson*, 701 P.2d at 906; *see generally* Murray, *Joint Payee Checks–Forged and Missing Endorsements*, 78 COMMERCIAL L.J. 393 (1973). We hold that payment of a check missing a necessary endorsement of a co-payee breaches the presentment warranty of good title.

Azle nevertheless argues that a missing endorsement is not a breach of the presentment warranty of good title, citing *Union Bank of Benton, Ark. v. First National*

*Bank of Mt. Pleasant, Texas,* 621 F.2d 790, 794 (5th Cir.1980). In *Union Bank,* the Fifth Circuit Court of Appeals concluded that " 'Good title' simply means that the drafts bear no forged endorsements or signatures." *Id.* at 794. The *Union Bank* court cited official comment 3 of section 3.417 of the Texas Business and Commerce Code as authority for its definition of the "good title" warranty. *Id.* at 794 n. 9. The court stated:

> 9. Official Comment 1, following U.C.C. sec. 4.207, directs us to section 3.417 for a comprehensive explanation of the good title warranty. Official Comment 3 of U.C.C., section 3.417 interprets this as a warranty which insures that all endorsements and signatures on a draft are genuine and not forged.

*Id.* However, comment 3 does not say that "good title" *only* means that there are no forged endorsements. The court does not address the issue of a "missing endorsement." The comment states that the warranty of good title "retains the generally accepted rule that the party who accepts or pays does not 'admit' the genuineness of indorsements, and may recover from the person presenting the instrument when they turn out to be forged." TEX.BUS. & COM.CODE ANN. sec. 3.417, official comment 3 (Vernon 1968). In addition to our view that *Union Bank* does not address whether a missing necessary endorsement constitutes a breach of good title, we note that even if the fifth circuit court had so held, we as a state court are not bound by a lower federal court decision on its interpretation of Texas law. *See Woodard v. Texas Department of Human Resources,* 573 S.W.2d 596, 598 (Tex.App.—Amarillo 1978, writ ref'd n.r.e.) (and the discussion and cases cited therein). Therefore, we do not view *Union Bank* as precluding our holding that the missing endorsement of a co-payee which is not in the alternative *is a breach of the presentment warranty of good title.*

■ Having held that payment of a check missing a necessary endorsement is a breach of the presentment warranty of good title, we next must determine whether Longview can assert breach of the presentment warranty as a defense which entitles it to return the check to Azle after the check had been finally paid by Longview. *See* TEX.BUS. & COM.CODE ANN. sec. 4.213 (Vernon 1968). The unamended version of section 4.213, which was in effect at the time of the transaction between Azle and Longview, provides:

> (a) An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first:
>
> (1) paid the item in cash; or
>
> (2) settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule or agreement; or
>
> (3) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith; or
>
> (4) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule or agreement.

*Id.*[1] Longview finally paid the check by posting and debiting the drawer's, John Waddell Construction Company, account. Section 4.302, TEX.BUS. & COM.CODE ANN. (Vernon 1968) describes when a payor bank is responsible for the late return of an item, in pertinent part as:

> In the absence of a valid defense such as breach of a presentment warranty (Subsection (a) of Section 4.207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of
>
> (1) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight

---

1. Ch. 785, sec. 1, 1967 Tex.Gen.Laws 2343, *amended by* ch. 621, sec. 1, 1985 Tex.Gen.Laws 2307–08, effective June 14, 1985.

of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline; or

(2) any other properly payable item unless within the time allowed for acceptance or payment of that item the bank either accepts or pays the item or returns it and accompanying documents.

*Id.* Longview did not return the check to Azle until the midnight deadline had passed. *See* TEX.BUS. & COM.CODE ANN. sec. 4.104(8) (Vernon 1968) (midnight of the next banking day following receipt of the check).

Azle argues that Longview was liable because it made final payment on the check by posting it to the account of its customer. Azle argues that section 4.302 specifically provides for a presentment warranty defense, but that section 4.213 does not mention a presentment warranty defense. Thus, Azle concludes that a presentment warranty defense cannot be asserted under section 4.213. We disagree.

■ Section 4.213 addresses the time of payment, not the legal effect of payment. It does not address the question of finality of a payment. *See Demos v. Lyons,* 151 N.J.Super. 489, 376 A.2d 1352 (N.J.Super. Ct.App.1977). Section 4.302 defines when a drawee bank will be liable if it returns an item past the midnight deadline. If the presentment warranty is breached, section 4.302 makes it quite clear that the loss can be shifted upstream to the collecting bank or depository bank, Azle, even if the problem is not discovered until long after the midnight deadline. Clark, *The Law of Bank Deposits, Collections, and Credit Cards,* 5–24, "Final Payment," sec. 5.8[3] (1981), *Miller,* 656 P.2d at 634. To hold otherwise would encourage negligent banks who improperly negotiate checks to send wrongly paid items through the collection process in the hope that subsequent banks in the chain will not discover the endorsement defect until the lapse of the midnight deadline.

Appellee also relies on *North Carolina National Bank v. South Carolina National Bank,* 449 F.Supp. 616 (D.S.C.1976), *affirmed,* 573 F.2d 1305 (4th Cir.1978), cert. denied, 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed. 2d 657 (1978) for the proposition that a payor bank can only contest "title" to an item until its midnight deadline. We observe that in that case the check was not made out to co-payees, but instead was made out only to one payee. Although the payee's endorsement was missing, it could have been supplied by the depository bank in accordance with section 4.205, TEX.BUS. & COM.CODE ANN. (Vernon 1968). In our case, the depository bank, Azle, could not supply the missing co-payee's endorsement, E.G. Smith Construction, since E.G. Smith was not Azle's customer. *See id.* In *North Carolina National Bank,* the court noted that a breach of presentment warranty would be a valid defense for a payor bank to assert for its failure to return a check or give notice of dishonor within its midnight deadline. *North Carolina National Bank,* 449 F.Supp. at 619. We find, therefore, that *North Carolina National Bank* supports the appellant's position, not appellee's. We hold as a matter of law that breach of a presentment warranty is a valid defense a payor bank can assert for its failure to return a check or give notice of dishonor within the midnight deadline.

In light of our holdings we need not address the third part of Longview's point of error one, or points of error two and three. We sustain Longview's point of error one and reverse the judgment of the trial court.

We reverse the summary judgment of the trial court and remand the cause for a trial on any remaining issues.